# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 8 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JUAN JESUS BARRON[1], | § | |
| Petitioner-Defendant, | § | |
| | § | |
| v. | § | (CA B-02-240) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent-Plaintiff. | § | |
| (CR B-00-425) | § | |

## GOVERNMENT'S ANSWER AND MOTION FOR DISMISSAL UNDER 8(a) OF THE RULES FOLL. 28 U.S.C. §2255

1.

The Court ordered the government to respond to Petitioner Juan Jesus Barron's (hereinafter referred to as "Barron") petition under 28 U.S.C. §2255 motion filed on December 30, 2002 by March 31, 2003. The government moves to dismiss and, in the alternative, moves for summary judgment.

2.

The government denies each and every allegation of fact made by Barron, except those supported by the record and those specifically admitted herein, and demands proof thereof.

---

[1] Petitioner's arraignment transcript can be found at TAB #121 of U. S. District Clerk's file. Petitioner's sentencing transcript can be found at TAB #127 of U. S. District Clerk's file.

3.

Barron was charged by indictment on October 10, 2000, in the United States District Court for the Southern District of Texas, Brownsville Division, Criminal Number B-00-425, with conspiracy to possess with intent to distribute in excess of 100 kilos of marihuana and with possession with intent to distribute in excess of 100 kilos of marihuana in violation of 21 U.S.C. §§846, 841(a)(1) and 841(b)(1)(B)(1 R. 1). On December 7, 2000, Barron was tried by a jury. On December 13, 2000, the jury found Barron guilty of both counts (DOC. 87). On March 12, 2001, the district court sentenced Barron to concurrent terms of one hundred twenty (120) months confinement, four-year terms of supervised release, and $200.00 special assessment (DOC. 114).

On March 13, 2001, Barron timely filed notice of appeal (DOC. 117). In his appeal, Barron brought three issues: (1) whether the district court erred in refusing to charge the jury on entrapment, Barron's theory of defense; (2) whether the district court abused its discretion in permitting the government to cross examine the petitioner regarding his prior conviction, and if so, whether it resulted in harmless error; and (3) whether the district court erred in denying Barron acceptance of responsibility. The judgement was affirmed in *United States v. Barron*, (01-40357)(DOC 130). The mandate was issued on December 13, 2001 (DOC. 129).

Thereafter, Barron filed a petition for a writ of certiorari. On April 15, 2002, said petition was denied (DOC 133). On December 30, 2002, Barron timely filed the instant motion (DOC. 134).

4.

## ALLEGATIONS

In his petition, Barron brings allegations of 'ineffective assistance' of counsel and a constitutional challenge to the statute of conviction.

A.    Ineffective Assistance

Barron alleges that trial counsel was constitutionally ineffective in several aspects:  (1) counsel failed to perform a pre-trial investigation of the case; (2) counsel failed to file any objections to the PSR; (3) counsel failed to argue for a minor role adjustment; and (4) counsel failed to seek proper discovery by failing to learn about Barron's prior convictions for which Barron was improperly impeached during trial.

B.    The district court misapplied the Guidelines by not assessing a minor role adjustment.

Barron argues that the district court erred by not assessing Barron a minor role adjustment.  Describing his role as that of a "courier for a single transaction", Barron argues the district court thereby misapplied the Guidelines.

3

C.    <u>The district court abused its discretion in denying the motion for mistrial upon the improper impeachment by the government by stale felony convictions.</u>

Barron argues the district court abused its discretion by failing to grant Barron's motion for mistrial upon the government's improper impeachment of Barron through the introduction of Barron's prior convictions of more than 10 years old, under FED.R.EVID. 609.

D.    <u>Barron was sentenced in violation of Apprendi.</u>

Barron argues that, as his verdict did not include a jury finding relating to quantity, under *Apprendi*, his sentence was limited to a maximum sentence of sixty months, the "default" or lowest statutory maximum sentence for federal felony marihuana cases.

5.

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §2255 (eff. April 24, 1996). Barron is currently incarcerated. He seeks federal habeas corpus relief pursuant to 28 U.S.C. §2255 from his conviction in the Houston Division of the Southern District of Texas. A §2255 motion "provides the primary means of collaterally attacking a federal conviction and sentence." *Jeffers v. Chandler*, 234 F.3d 277, 279 (5th Cir. 2000) (citation omitted). Relief under a §2255 motion "is warranted for errors that occurred at trial or sentencing." *Id.* He

4

seeks relief from his conviction and sentence, and the relief sought under §2255 is appropriate .

6.

A.   Statement of the Facts[2].

1.  Crime of Conviction

On September 15, 2000, a confidential informant learned from Esequiel Gonzalez-Salinas (co-defendant # 1, hereinafter "Salinas") that a quantity of marihuana was being offered for sale (DOC. 126 p. 27, 96, 111).  The source of the marihuana was Rene de la Pena (DOC. 126 p. 106).  The informant introduced an undercover law enforcement agent (hereinafter UC) to Salinas[3] as a person interested in purchasing the marihuana on September 18, 2000 at approximately 3:30 or 4:00 p.m. at a grocery store in Los Indios, Texas (DOC. 126 p. 27-28).  Salinas agreed to take the UC to the location of the marihuana for the sale.  Salinas guided the UC west on State Highway 281, then onto Farm Road 41 to Mercedes, Texas (DOC. 126 p. 30).  During the drive, the UC discussed the prospective purchase of 300

_____

[2]Unless otherwise indicated, all references in the Statement of Facts are to the facts set out in the presentence report at ¶'s 8-20,23 and adopted by the district court (DOC 46).

[3]Although it would appear that Gonzalez would be the control name of Esequiel Gonzalez-Salinas, he is referred to throughout the record as Salinas.  For the sake of simplicity, he is referred to as Salinas herein as well.

pounds of marihuana with Salinas (DOC. 126 p. 30). Salinas told the UC to drive slowly, because "they were getting everything ready" (DOC. 126 p. 41). The undercover agent explained to Salinas that the purchase money was with the "money man" located in La Feria, Texas (DOC. 126 p. 30). Prior to reaching their destination, petitioner's home, Salinas directed the UC to drive around to determine if they were being followed by law enforcement (DOC. 126 p. 31).

Meanwhile, back at petitioner's home, at approximately 4:30 p.m., the petitioner summoned Sergio Cavazos-Medrano (co-defendant #4) over to his home. Once there, petitioner showed Cavazos the bundles of marihuana (DOC. 126 p. 52, 53). Upon the petitioner's request, Cavazos was to assist in loading the marihuana into the van (DOC. 126 p. 54).

Upon arriving at petitioner's home, the petitioner approached the UC van (DOC. 126 p. 32). Petitioner advised the UC that he only had 250 pounds of marihuana, but that if the UC could wait thirty minutes, he could sell the UC an additional 50 pounds (DOC. 126 p. 32, 62). The UC declined to wait, advising the petitioner that he would take the 250 pounds then and buy the other 50 pounds on a later date (DOC. 126 p. 33). Petitioner directed the UC to back the van into the driveway. The petitioner, Salinas, Sergio Cavazos-Medrano (co-defendant # 4), and Joel Braulio Rodriguez (co-defendant # 2) retrieved the marihuana from a storage

room at the house and loaded it into the van (DOC. 126 p. 34). Salinas re-entered the van and directed the UC to depart in order for the UC to retrieve the purchase money (DOC. 126 p. 55). Petitioner, Rodriguez, and Cavazos followed the UC van in another car (DOC. 126 p. 35, 59, 100). Once they reached La Feria, Texas, Salinas directed the UC to pull into a gas station there and to call the "money man" to bring the money to the station (DOC. 126 p. 36). While they waited, Salinas conversed with petitioner (DOC. 126 p. 36, 78). The car containing the petitioner, Rodriguez, and Cavazos drove across the street into the Dairy Queen parking lot (DOC. 126 p. 79-81). Instead of the "money man" arriving, a police cruiser arrived. Salinas directed the UC to drive off. However, the cruiser pulled the van over a short distance away (DOC. 126 p. 37). As the cruiser arrived at the scene, the vehicle containing the petitioner attempted to depart the Dairy Queen parking lot, but was stopped by agents (DOC. 126 p. 79). The police seized the 250 pounds of marihuana from the UC van (DOC. 126 p. 38, 133). As an agent approached the vehicle containing the petitioner, the agent observed the petitioner reaching between his legs under the seat (DOC. 126 p. 80). The petitioner was immediately pulled from the vehicle. A loaded Browning .9mm pistol, with a live round in the chamber was retrieved from beneath the front seat where the petitioner had been seated (DOC. 126 p. 84, 100). In the back seat, a bullet proof vest was found.

Following his arrest and receipt of Miranda warnings, the petitioner advised the agents that he had been told by Rene de la Pena that de la Pena had paid a U.S. Official $5,000.00 to cross marihuana into the United States (DOC. 126 p. 115). De la Pena had delivered the marihuana to the petitioner's house on September 16, 2000, for storage and sale (DOC. 126 p. 106). The petitioner admitted that he sold the marihuana to the UC for $145.00 per pound and assisted in loading the marihuana into the UC van (DOC. 126 p. 107). Upon collecting the money for the sale of the marihuana to the UC, the petitioner was to deliver the money to de la Pena and receive his "cut" from de la Pena (DOC. 126 p. 107). The petitioner provided agents with the cell number for de la Pena's phone. Phone records revealed the phone had been disconnected (DOC. 126 p. 120).

At trial, the petitioner testified that he met co-defendant, Joel Braulio Rodriguez, in a small town near Matamoros, Mexico, in mid July 2000 (DOC. 126 p. 137). Rodriguez offered to buy the petitioner's 4X4 Blazer truck, and asked Barron if he'd ever driven it through the river to bring marihuana into the United States (DOC. 126 p. 138). Barron gave Rodriguez his phone number in case Rodriguez wanted to buy the Blazer (DOC. 126 p. 138). Although Rodriguez visited Barron's home several times to look at the Blazer, he never purchased it (DOC. 126 p. 139).

In August, approximately one month prior to his arrest, Barron met Rene de la Pena at some horse races north of Edcouch on FM 1015. De La Pena asked Barron if he knew anyone interested in buying marihuana. Barron told de la Pena that "Checa Salinas" (Esequiel Gonzalez-Salinas) may be interested (DOC. 126 p. 139). De la Pena gave Barron his cell phone number (DOC. 126 p. 140). Apparently on the day of his arrest, Barron received a call from Salinas. Salinas told Barron that he, Salinas, knew Barron knew de la Pena, and asked Barron if he would store some marihuana for them for only a few hours (DOC. 126 p. 139). Salinas assured Barron that there would "not be a problem", as de la Pena had paid $5,000.00 to U.S. officials to cross the marihuana into the United States "without any problems" (DOC. 126 p. 140). Later de la Pena delivered the marihuana to Barron's house (DOC. 126 p. 141). Barron understood that de la Pena had delivered 300 pounds to him, however, Salinas advised him it was only 250 pounds (DOC. 126 p. 141). Barron became concerned with the weight discrepancy and attempted to phone de la Pena, but discovered the number de la Pena had given him two months prior had been disconnected (DOC. 126 p. 142).

Barron testified that he next heard from co-defendant Joel Braulio Rodriguez, who called Barron out of the blue and advised he was bringing Barron and his wife some cheese on the day of Barron's arrest (DOC. 126 p. 142-43). Barron naturally

found this very "odd", as Rodriguez doesn't even know Barron's wife (DOC. 126 p. 143). Barron gave as reasons for his decision to become involved with the marihuana, his physical condition and his belief that the law had been paid and therefore everything had been taken care of (DOC. 126 p. 144).

2. Statement of Facts Relating to Improper impeachment.

Immediately upon cross-examination of Barron, Barron was confronted with his two prior felony convictions; a 1976 marihuana conviction and a 1982 alien transporting conviction (DOC. 126 p. 144-45). The evidence was timely objected to, citing Rule 609, yet overruled (DOC. 126 p. 145).

Following the close of evidence, the district court inquired into whether the written notice, required by Rule 609 for the admission of prior convictions older than 10 years, had been complied with (DOC. 126 p. 156-58). The government claimed to have provided, and counsel for Barron confirmed that he had received, copies of reports identifying the convictions in question (DOC. 126 p. 156-57). The government represented that it had advised counsel for Barron that it did not intend to offer evidence of the convictions in the case in chief, but did intend to offer them should Barron testify (DOC. 126 p. 157). Counsel for Barron contested that he understood the government intended to offer evidence of prior convictions older than 10 years or contrary to Rule 609 (DOC. 126 p. 157-58).

10

The district court found that the government's notice was inconsistent with the "letter of the rule" and decided to rectify the situation by charging the jury to disregard the evidence of prior convictions (DOC. 126 p. 157-58). The district court instructed the jury: ... "you must disregard ... any evidence regarding the prior convictions of the Defendant in these cross examinations. So **that** evidence is something that you may not consider in your deliberations" (DOC. 126 p. 161).

7.

The four grounds justifying relief under 28 U.S.C. §2255 are: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence is otherwise "subject to collateral attack". 28 U.S.C. §2255 (2000). Thus, motions to vacate sentences "may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999)(citations omitted); *see Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305 (1974); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962).

A "'collateral challenge may not do service for an appeal.'" *United States v. Shaid*, 937 F.2d 228, 233 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 167-168, 102 S.Ct. 1584, 1594 [1982]).  Once the direct review process has been terminated, a presumption of finality attaches and the conviction is reviewable only on issues of constitutional or jurisdictional magnitude. *Shaid*, 937 F.2d at 232 (citing *Hill*, 368 U.S. at 428, 82 S.Ct. at 471).  If a claim of constitutional or jurisdictional dimension is raised, it is reviewable for the first time on collateral attack only if the movant demonstrates cause for his procedural default and actual resulting prejudice. *Id.*  On the other hand, "[n]onconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding." *United States v. Towe*, 26 F.3d 614, 616 (5th Cir. 1994).

To obtain post-conviction relief in a collateral attack, a defendant must show either:  (1) cause excusing his procedural default and actual prejudice resulting from the alleged error, *see Frady*, 456 U.S. at 167-68, 102 S.Ct. at 1594; or (2) that he is actually innocent. *Shaid*, 937 F.2d at 232.  "'Actual innocence' means 'factual innocence, and not mere legal insufficiency.'" *Bousley v. United States*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 1611-12 (1998); *United States v. Torres*, 163 F.3d 909, 911 n.9 (5th Cir. 1999).  To prove actual innocence, the petitioner "must

demonstrate that, in light of all the evidence, it is more likely than not that no [fact finder] would have convicted him." *Id.* (citations and quotations omitted).

8.

To establish ineffective assistance of counsel, the §2255 petitioner must allege and prove:  (1) that his counsel's performance was deficient; and (2) that he was prejudiced by the deficiency. *Strickland v. Washington,*  466 U.S. 668, 687, 104 S. Ct. 2052, 2064  (1984); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995); *see also Glover v. United States*, 531 U.S. 198, 202-04, 121 S.Ct. 696, 700-01 (2001)(discussing factors to consider in evaluating claim to demonstrate prejudice).

Under the first prong, counsel's performance is deficient if it is objectively unreasonable. *Walker,* 68 F. 3d at 934.  Under the second prong, prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *accord Glover*, 531 U.S. at 204, 121 S.Ct. at 701 (citing, *inter alia*, *Strickland)*.  Significantly, the petitioner making the claim of ineffective assistance must identify the acts or omissions that are alleged to have been the result of unreasonable professional judgement. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.  Mere conclusory allegations are insufficient to raise a constitutional issue in

a habeas case. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982); *Lockhart v. Fretwell*, 506 U.S. 364, 368, 113 S.Ct. 838, 842 (1993)("[A] criminal defendant alleging prejudice must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'")(quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

A claim of ineffective assistance of counsel may be rejected based on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance. *Micheaux v. Collins*, 911 F.2d 1083, 1090-91 (5th Cir. 1990). The failure to prove both components of the *Strickland* test, either a deficient performance or actual prejudice, defeats an ineffective assistance claim. *United States v. Abner*, 825 F.2d 835, 846 n. 18 (5th Cir. 1987).

A. <u>At the plea stage</u>.

"Effective assistance" requires counsel to provide meaningful advice on the facts and law applicable to a plea agreement. *United States v. Hodges*, 259 F.3d 655, 659 (7th Cir. 2001); *United States v. French*, 719 F.2d 387, 389 (11th Cir. 1983). "While it need not be errorless, counsel's advice must be within the realm of competence demanded of attorneys representing criminal defendants". *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993). In the context of a guilty plea,

14

Barron must demonstrate that, but for counsel's errors, he would not have plead

guilty and would have gone to trial. *Id.* citing *Hill*, 474 U.S. at 59.

Conversely, a criminal defendant has a right to effective assistance of counsel

in deciding whether to accept or reject a proposed plea agreement. *Toro v.*

*Fairman,* 940 F.2d 1065, 1067 (7th Cir. 1991); see *Johnson v. Duckworth*, 793

F.2d 898, 900-902 (7th Cir. 1986), *cert. denied*, 479 U.S. 937, 107 S.Ct. 416, 93

L.Ed.2d 367 (1986); accord *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435,

438 (3rd Cir. 1982) (decision to reject proffered plea and plead not guilty is a vitally

important decision and occurs at a critical stage at which right to effective assistance

of counsel attaches); *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1981)

(incompetent advice to withdraw negotiated guilty plea and instead stand trial

violates defendant's right to effective assistance of counsel); *Turner v. State of*

*Tennessee*, 664 F.Supp. 1113, 1118-21 n. 15 (M.D.Tenn. 1987) (incompetently

counseled decision to go to trial falls within Sixth amendment protection), aff'd, 858

F.2d at 1201, *vacated on other grounds*, 492 U.S. 902, 109 S.Ct. 3208, 106

L.Ed.2d 559 (1989).

B. Sentencing errors

In the context of sentencing errors, the petitioner must show that he was

prejudiced by counsel's ineffective assistance. The prejudice prong, however, is

15

more than just an outcome determinative test; it requires the petitioner to demonstrate that the result of the proceeding was fundamentally unfair or unreliable. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 843-844 (1993); *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1997).

Even if Barron demonstrates that his counsel provided constitutionally infirm representation, Barron must also demonstrate prejudice. Although Barron need not demonstrate that, absent the error, his sentence would have been "significantly less harsh", he must demonstrate prejudice. "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance". *Glover v. United States,* 531 U.S. 198, 203, 121 S.Ct. 696, 700 (2001).

1.    Counsel failed to perform a pre-trial investigation of the case.

Barron's conclusory claim is belied by the record. The record reveals counsel for Barron filed a myriad of thoughtful substantive motions, which suggest significant investigation and analysis. See: DOCs 31-44. Counsel has declined to provide an affidavit regarding Barron's instant allegations.

16

2.    <u>Counsel failed to file any objections to the PSR</u>.

Barron's complaint is belied by the record. Counsel for Barron filed a thoughtful series of objections to the PSR, containing nine separate objections.

3.    <u>Counsel failed to argue for a minor role adjustment</u>.

Counsel for Barron objected to the PSR's assessment of manager status. Barron fails to demonstrate counsel's failure caused him prejudice.

The petitioner admitted that he sold the marihuana to the UC for $145.00 per pound and assisted in loading the marihuana into the UC van (DOC. 126 p. 107). As an agent approached the vehicle containing the petitioner, the agent observed the petitioner reaching between his legs under the seat (DOC. 126 p. 80). The petitioner was immediately pulled from the vehicle. A loaded Browning .9mm pistol, with a live round in the chamber was retrieved from beneath the front seat where the petitioner had been seated (DOC. 126 p. 84, 100). In the back seat, a bullet proof vest was found. A seller of drugs is not considered to play a "minor role". *United States v. Brooks*, 957 F.2d 1138, 1149 (4th Cir. 1992).

4.    <u>Counsel failed to seek proper discovery by failing to learn about Barron's prior convictions for which Barron was improperly impeached during trial.</u>

Counsel for Barron acknowledged on the record that he was noticed of the prior convictions. Here, counsel for Barron confirmed receiving written advance

notice of Barron's prior convictions more than three weeks prior to trial (DOC. 126 p. 157). He suffered no surprise nor prejudice.

## C. Misapplication of the Guidelines

> 1. Application of the sentencing guidelines is not a cognizable claim under § 2255.

Barron argues that the district court erred by not assessing Barron a minor role adjustment. Describing his role as that of a "courier for a single transaction", Barron argues the district court thereby misapplied the Guidelines. Barron's contention that the district court incorrectly applied the sentencing guidelines does not raise constitutional concerns which are cognizable under §2255. "Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding." *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996) (quoting *United States v. Vaughn*, 955 F2d 367, 368 [5th Cir 1992]). Furthermore, technical application or misapplication of the sentencing guidelines does not raise a constitutional issue cognizable under §2255. *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) (citing *United States v. Vaughn*, 955 F.2d 367, 368 [5th Cir. 1992]). Moreover, since this claim involves an application of sentencing guidelines, which is not a constitutional issue, it should be dismissed.

2.   The trial court correctly applied the Federal Sentencing Guidelines.

Barron argues that the district court erred by not assessing Barron a minor role adjustment.   Describing his role as that of a "courier for a single transaction", Barron argues the district court thereby misapplied the Guidelines.

The petitioner admitted that he sold the marihuana to the UC for $145.00 per pound and assisted in loading the marihuana into the UC van (DOC. 126 p. 107). As an agent approached the vehicle containing the petitioner, the agent observed the petitioner reaching between his legs under the seat (DOC. 126 p. 80).   The petitioner was immediately pulled from the vehicle.   A loaded Browning .9mm pistol, with a live round in the chamber was retrieved from beneath the front seat where the petitioner had been seated (DOC. 126 p. 84, 100).   In the back seat, a bullet proof vest was found.   A seller of drugs is not considered to play a "minor role". *United States v. Brooks*,  957 F.2d 1138, 1149 (4th Cir. 1992).

D.   The district court abused its discretion in denying the motion for mistrial upon the improper impeachment by the government by stale felony convictions.

Barron argues the district court abused its discretion by failing to grant Barron's motion for mistrial upon the government's improper impeachment of Barron through the introduction of Barron's prior convictions of more than 10 years

19

old, under Fed.R.Ev. 609. Barron's instant claim essentially mirrors the complaint

he made on direct appeal. The Fifth Circuit found against Barron on this issue.

This raises the question, whether the instant claim is foreclosed under 'the law

of the case'. Barron brought the same essential claim on direct appeal. This Court

is foreclosed from re-visiting the claims Barron brought and which were decided on

direct appeal or in his Petition for Certiorari. *United States v. Erwin*, 277 F.3d 727,

733 (5th Cir. 2001); *United States v. Becerra*, 155 F.3d 740, 752-53 (5th Cir.

1998)('law of the case' precludes district court from re-examining issue decided on

direct appeal). *United States v. Lawrence*, 179 F.3d 343, 351 (5th Cir.1999).

"[W]hen a court decides upon a rule of law, that decision should continue to govern

the same issues in subsequent stages in the same case." *Christianson v. Colt Indus.*

*Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

"Absent an intervening change in the law of a circuit, issues disposed of on direct

appeal generally will not be considered on a collateral attack by a motion pursuant

to § 2255." *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir.1989); see also

*United States v. Warner*, 23 F.3d 287, 291 (10th Cir.1994) (affirming district

court's dismissal of §2255 issues previously resolved on direct appeal). However,

"unlike res judicata, the law of the case doctrine applies only to issues that were

actually decided, rather than all questions in the case that might have been decided,

20

but were not." *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Amer.*, 272

F.3d 276, 279 (5th Cir.2001). The law of the case proscription applies regardless

of whether the issue was decided explicitly or by necessary implication. See

*F.D.I.C. v. McFarland*, 243 F.3d 876, 883 (5th Cir.2001). The law of the case

doctrine applies not only to issues decided explicitly, but also to everything decided

"by necessary implication." *Crowe v. Smith*, 261 F.3d 558, 562 (5th Cir. 2001).

See *Browning v. Navarro*, 887 F.2d 553, 556 (5th Cir.1989). And, though not

expressly addressed in an initial appeal, those matters that were fully briefed to the

appellate court and were necessary predicates to the ability to address the issue or

issues specifically discussed are deemed to have been decided tacitly or implicitly,

and their disposition is law of the case. *In re Felt*, 255 F.3d 220, 225(5th Cir.

2001), *cert. denied*, 122 S.Ct. 807 (U.S. Jan 7, 2002). See: *Knotts v. United*

*States*, 893 F.2d 758 (5th Cir.1990).

    If the court determines that Barron's instant claims are distinguishable from

those raised on direct appeal, Barron's next hurdle relates to the requirement he

demonstrate "cause and prejudice" in not pursuing the instant claim on direct appeal.

*United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). In the absence

of a "complete miscarriage of justice", Barron may not bring a collateral assault on

his conviction without demonstrating "cause" for not pursuing his claims on direct

21

appeal and "prejudice" which would be suffered for denial of such collateral review. *Jackson v. United States*, 258 F.Supp. 175, 178  (N.D. Tex. 1966).  Barron fails to allege or demonstrate either cause or prejudice.  The motion should be denied and dismissed under Rule 8(a) of the Rules Foll. 28 U.S.C. §2255 inasmuch as he offers no cause and prejudice for obtaining review on collateral attack.  *See, e.g., United States v. Shaid*, 937 F.2d 228, 231-232 n.7 (5th Cir. 1991)(en banc) (constitutional or jurisdictional issue reviewable for first time on collateral attack only if the movant demonstrates cause for his procedural default and actual resulting prejudice or that the uncorrected error would result in a complete miscarriage of justice).  The Fifth Circuit noted that any improper admission of Barron's prior offenses was rendered harmless by the curative jury instruction and overwhelming evidence of guilt.  He, therefore, fails to demonstrate that he was prejudiced.

An allegation of "miscarriage of justice" warrants collateral review where a constitutional violation has alleged to have caused the conviction of one innocent of the crime.  *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 1470 (1991); *Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643 (1986).  "The 'cause' standard requires [the movant] to show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v.*

22

*Collins*, 961 F.2d 1181, 1183 [5th Cir. 1992]) which in turn quotes *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645).  "Objective factors that constitute cause include interference by officials that makes compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to [the petitioner] at the prior occasion, and ineffective assistance of counsel in the constitutional sense." *Id.*  Barron's complaint essentially concedes he was aware of this issue at the time of direct appeal, if not before.

To avoid the consequences of a dismissal by applying the fundamental-miscarriage-of-justice exception to Rule 9(b) foll. 28 U.S.C. §2255, a movant must demonstrate, as a factual matter, that he did not commit the crime of conviction. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 861, 867 (1995); *Ward v. Cain*, 53 F.3d 106, 107 (5th Cir. 1995) (citing *Schlup*).  Stated differently, the movant must demonstrate that the failure to consider his claim will result in his continued incarceration though innocent. *See Saahir v. Collins*, 956 F.2d 115, 120 (5th Cir. 1992); *United States v. Espinoza*, 82 F.3d 640, 642 (5th Cir.1996) (citing *Saahir*). Barron makes no such claim.

This issue was litigated on direct appeal and was decided against Barron. Barron may not re-litigate the issue under the law of the case.

E.    Barron was sentenced in violation of Apprendi.

Barron argues that, as his verdict did not include a jury finding relating to quantity, under *Apprendi*, his sentence was limited to a maximum sentence of sixty months, the "default" or lowest statutory maximum sentence for federal felony marihuana cases.

Barron's argument is premised on an incorrect factual basis. In fact, the jury in his case was charged in the jury instructions that an element of the charges included the quantity of marihuana involved. "Third: That the quantity of marihuana was more than 100 kilograms, to wit: approximately 113.81 kilograms; ..."(DOC 126, pp. 168-69).

Barron was duly convicted of a violation of 21 U.S.C. §841(b)(1)(B), for which he was exposed to a maximum sentence of forty years confinement. His ten-year sentence does not implicate *Apprendi*.

9.

No evidentiary hearing is necessary to resolve issues presented. *United States v. Samuels*, 59 F.3d 526, 530 n.16-17 (5th Cir. 1995)(citations omitted); *United States v. Bartholomew*, 974 F.2d 39,41-42 (5th Cir. 1992). Barron alleges no facts which would warrant an evidentiary hearing under 28 U.S.C. §2255; therefore, the government moves for dismissal, or in the alternative, summary judgment.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the government respectfully prays that Barron's §2255 petition be dismissed or, in the alternative, be subject to summary dismissal.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

JAMES L. TURNER
Chief, Appellate Division

Mark M. Dowd
Assistant United States Attorney
600 E. Harrison, # 201
Brownsville, Texas, 78520
Texas Bar No. 06070500
Federal Bar No. 9314
(956) 548-2554/Fax (956) 548-2549

## CERTIFICATE OF SERVICE

I, Mark M. Dowd, Assistant United States Attorney, certify that a true and correct copy of the above document has been served by placing same in United States mail, postage prepaid, to Juan Jose Barron, (#19942-079), FCI Three Rivers, P.O. Box 4200, Three Rivers, TX 78071 on this the 28th day of March, 2003.

Mark M. Dowd
Assistant United States Attorney

25

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO.B-00-425 |
| | § | |
| JUAN JESUS BARRON | § | ▬▬▬▬▬▬▬▬▬▬ |

## DEFENDANT'S OBJECTIONS TO PRE-SENTENCE
## INVESTIGATION REPORT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE(JOE) R. HERNANDEZ and files these objections, to the pre-sentence investigation report:

## I.

### PROCEDURAL BACKGROUND

On December 12, 2000, Defendant Juan Jesus Barron appeared before Judge Hilda Tagle and proceeded to trial on both counts of the indictment. The Jury returned a guilty verdict on both counts of Conspiracy to possess, with intent to distribute, a quantity exceeding 100 kilograms of marihuana and Possession, with intent to distribute, a quantity exceeding 100 kilograms, that is approximately 113.81 kilograms gross weight of marihuana, in violation of 21 U.S.C. § § 846,

OBJECTIONS TO PRESENTENCE REPORT   Page 1

GOVERNMENT
EXHIBIT
1

841(a)(1) AND 841(b)(1)(B).

The pre-sentence investigation report was disclosed on January 26, 2001. Defendant's objections were to be filed on or before February 12, 2001. These objections are timely filed. JUAN JESUS BARRON reviewed this pre-sentence investigation report with counsel as evidenced by his signature.

## II.

## FACTUAL OBJECTIONS

**OBJECTION NO. 1:** ▬▬▬▬▬▬▬▬▬

1. Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE R. HERNANDEZ, objects to page 6, paragraph 17 of the PSI which states "At the same time, other state and federal agents stopped the green vehicle across the street at a Dairy Queen. A U.S. special agent observed the front passenger (Barron) make a physical movement as to reach underneath the front seat..."

Defendant contends that the testimony of Special Agent, who observed a mere physical movement by Juan Jesus Barron does not equate to knowledge by Juan Jesus Barron that the weapon was present or even used or brandished by Juan Jesus Barron. Special Agent never saw Mr. Juan Jesus Barron lift the weapon nor hold the weapon at any time. In fact, Defendant's own testimony revealed that he never reached for a weapon underneath the seat. Defendant further testified that the alleged weapon was not his weapon, and that it was not even his car, that the car belonged to Joel Braulio Rodriguez. In *Bailey v. United States*, 516 U.S. 137 (1995), the Supreme Court held that "using" a firearm during a drug trafficking offense requires evidence

OBJECTIONS TO PRESENTENCE REPORT    Page 2

sufficient to show "active employment" of the firearm by the defendant.   "Proof of mere proximity and accessibility is not sufficient. *id.* at 145.   Further, under the "carrying" prong of the statute; the Fifth Circuit has held that transportation in a locked glove compartment is sufficient to establish carrying. *See Muscarello v. United States*, 524 U.S. 125 (1998).   However, the present case can be distinguished in that Juan Jesus Barron did not own the vehicle he was a passenger in, and there is conflicting testimony as to knowledge that the weapon was present.   If we do not consider the conflicting testimony of two co-defendants, and rely solely on the testimony of Juan Jesus Barron and the Special Agent, then all we have is Juan Jesus Barron negating the fact that he had knowledge that the weapon was present and that he did not try to reach for the weapon.   Also, we have Special Agent testimony showing that he never saw Juan Jesus Barron actually touch, brandish, display, use or handle the alleged weapon.   *See Smith v. United States*, 508 U.S. 223 (1998).

**OBJECTION NO.2:**

2.   Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE R. HERNANDEZ, objects to page 7, paragraph 19 of the PSI which states "Investigation revealed the weapon and vest belonged to Barron.   Initially, Cavazos and Rodriguez had stated that the weapon belonged to Barron.   Rodriguez maintains his position.   However, Cavazos now states he does not know who the weapon belongs to."

The Defendant Juan Jesus Barron contends that based on his testimony that the weapon did not belong to him and based on the fact that there were no fingerprints lifted indicating that he had ever had possession of the weapon, nor any other information presented

OBJECTIONS TO PRESENTENCE REPORT  Page 3

to this Court that Juan Jesus Barron is the rightful owner of the abovementioned weapon, a Browning 9mm pistol, the Defendant respectfully asks this Court to not consider this allegation nor the veracity of the abovementioned statement in the PSI. *See supra.*   Further, the two conflicting statements made by the two co-defendants,  as indicated  above, illustrate that this statement that Juan Jesus Barron was the owner of the weapon is clearly erroneous and highly prejudicial.

**OBJECTION NO. 3:**

3.    Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE R. HERNANDEZ, objects to page 7, paragraph 20 of the PSI which states "According to an independent investigation, the most culpable in the instant offense is Juan Jesus Barron, who appears to be the source of the marihuana."

Defendant contends that he was not the most culpable and this assumption is based merely on speculation and clearly unfounded.  Secondly, it is highly prejudicial and clearly there is no probative value.


**OBJECTION NO. 4:**

4.    Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE R. HERNANDEZ, objects to page 7-8, paragraph 23 of the PSI which states "The defendant denied his guilt and failed to accept responsibility for his criminal conduct..."

The Defendant contends that this statement is erroneous based on the fact that Juan Jesus Barron has admitted guilt and accepted responsibility for his actions, however, he has relied on the fact that the government engaged in a conspiracy to entrap him.  Apparently, there is a conflict

OBJECTIONS TO PRESENTENCE REPORT   Page 4

within the circuits whereby the fifth circuit shows through, *United States vs. Brace*, that only in rare situations can you allow acceptance of responsibility when entrapment is alleged. On the other hand, according to the tenth circuit, in *United States vs. Hoenscheidt*, 7 F.3d 1528(10th Cir. 1993), the Court reasoned that acceptance of responsibility in entrapment cases should be allowed and the valuation of points toward a two point reduction be readily assessed in all entrapment cases whereby the defendant admits the conduct but asserts an apparently imperfect defense.

Further, based on the fact that there is a conflict within the tenth circuit and fifth circuit, the Defendant therefore claims a denial of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and a denial of Due Process. Without uniformity within the circuits, the purpose of the sentencing guidelines become obsolete, and this in turn, leads to deviation from a standard of uniformed application throughout the United States. The Sentencing Commission originally promulgated this sentencing guidelines as emergency amendments to deter "single acts of aberrant behavior." *See U.S.S.G.* Chapter 1, Part A. When there is conflict within the circuits in allowing a two point reduction to the offense level when alleging the entrapment defense, then a defendant is not afforded equal protection of the laws under our system of justice.

**OBJECTION NO. 5:**

5. Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE R. HERNANDEZ, objects to page 13-14, paragraphs 47-51, of the PSI which state that defendant was arrested for "Cause No. Cr-113, 534-A-Driving While Intoxicated; Cause No. Cr-115, 753-D-Driving While Intoxicated; Cause No. Cr-137-, 971-B-Driving While Intoxicated;

OBJECTIONS TO PRESENTENCE REPORT   Page 5

Cause No. CR-169, 200-C-Driving While Intoxicated; Cause No. CR-177, 597-D-Unlawful Carrying of a Weapon."

The Defendant vehemently denies committing these offenses and requires proof beyond a reasonable doubt and invokes his right against self incrimination,  Fifth Amendment Right U.S. Constitution, invokes his right to confront the witnesses against him, Six Amendment Right U.S. Constitution, and Presumption of Innocence.  Defendant contends that inclusion of these pending charges in the PSI poses a harmful prejudicial effect that clearly outweighs any probative value. These pending charges should, therefore,  be omitted and not included anywhere on the PSI.

### III.

### OBJECTIONS TO GUIDELINE CALCULATIONS

**OBJECTION NO. 6:**

6. Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE R. HERNANDEZ, objects to page 8, paragraph 27 of the PSI whereby the offense level is being "increased by two (2) levels because a weapon was present during the commission of the instant offense."

Defendant contends that these two levels should not be assessed to increase the offense level  because the testimony of the Special Agent,  who observed a mere physical movement by Juan Jesus Barron, does not illustrate how Juan Jesus Barron even knew of the weapon's presence. In fact,  the Special Agent testified that he never saw Mr. Juan Jesus Barron lift the weapon nor hold the weapon at any time.  In fact, Defendant's own testimony revealed that he never reached for a weapon underneath the seat. Defendant further testified that the alleged weapon was not his weapon, and that it was not even his car, that the car belonged to Joel Braulio Rodriguez.  In *Bailey v. United States*, 516 U.S. 137 (1995), the Supreme Court held that  "using" a firearm during a drug trafficking offense requires evidence sufficient to show "active employment" of the firearm by the defendant.  "Proof of mere proximity and accessibility is not sufficient. id.  at 145.

OBJECTIONS TO PRESENTENCE REPORT   Page 6

Further, under the "carrying" prong of the statute; the Fifth Circuit has held that transportation in a locked glove compartment is sufficient to establish carrying. *See Muscarello v. United States*, 524 U.S. 125 (1998). However, the present case can be distinguished in that Juan Jesus Barron did not own the vehicle he was a passenger in, and there is conflicting testimony as to knowledge that the weapon was present. If we do not consider the conflicting testimony of two co-defendants, and rely solely on the testimony of Juan Jesus Barron and the Special Agent, then all we have is Juan Jesus Barron negating the fact that he had knowledge that the weapon was present and that he tried to reach for the weapon. Also, we have Special Agent testimony showing that he never saw Juan Jesus Barron actually touch, brandish, display, use or handle the alleged weapon. *See Smith v. United States*, 508 U.S. 223 (1998).

Further, there seems to be a denial of the equal protection clause of the Fourteenth Amendment to the United States Constitution and a denial of due process of law. In the instant case, the United States Government did not allege as separate counts of the indictment that there was a weapon brandished by Defendant Juan Jesus Barron in order for an affirmative finding by the trier of fact. The government now comes and makes claim that there was a weapon present and therefore, adding two points to the offense level. This is, therefore, a denial of due process since the method of obtaining this result is left upon the United States Probation Department and the United States Government, subject to the Court's approval, to make the decision that there are sufficient facts to allow this two point addition to the offense level. We submit to the Court that this question is a question of fact for a Jury to decide. It is clear that the defendant, as in the instant case, is not afforded the right of due process. In fact, in the present case, the defendant testified that he didn't even know the weapon was present, that the car they were in was not his car, and that the he never reached for anything. And no one saw him brandish, use, display or possess the weapon. All there is, as abovementioned, is conflicting statements from two co-defendants. *See supra*, *Smith*.

Therefore, the Defendant Juan Jesus Barron respectfully asks this Court to deny the Government's request for a two point increase to the offense level.

OBJECTIONS TO PRESENTENCE REPORT    Page 7

**OBJECTION NO. 7:**

7. Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE R. HERNANDEZ, objects to page 9, paragraph 29 of the PSI whereby the offense level is being "increased two (2) levels because the defendant was a manager and/or supervisor."

Defendant Juan Jesus Barron contends that these two levels should not be assessed to increase the offense level  because Defendant claims that based on the nature of the transaction as it occurred, Defendant claims that he was entrapped, and in fact,  as decided in *United States v. Brown*, 944 F.2d 1377 (7th Cir. 1991), "mere distribution of a large quantity of contraband does not signify management status.  Juan Jesus Barron although playing a role as co-defendant contends that he did not have managerial/supervisory power over the marijuana.  As the testimony developed in trial,   it seems that the informant and the Undercover Agents were more in control of when and where the contraband was to be delivered, and picked up.    As the probation officer states "the drugs were at his home, he recruited Sergio Cavazos to help him load the marijuana into the van and directed Sergio Cavazos to help him load the marihuana into the van and directed Sergio Cavazos to drive Joel Braulio Rodriguez' vehicle in order to get paid for the marihuana load." This statement simply suggests by its very nature that Juan Jesus Barron controlled Sergio Cavazos' every move.  Juan Jesus Barron contends that Sergio Cavazos acted voluntarily and assumed his own independent role in this drug transaction. Any display showing that Juan Jesus Barron was a manager of Sergio Cavazos, is a clear attempt by Sergio Cavazos to minimize his role to obtain a favorable plea agreement with the United States Government, as evidenced by Sergio Cavazos' testimony and plea agreement, *See PSI Report* Page 4, Paragraph 5.  Further, the role adjustment applies to organizers and leaders, not to "important or essential figures." *United States v. Litchfield*, 959 F.2d 1514 (10th Cir. 1992); *see also United States v. Moeller*, 80 F.3d 1053, 1062-63 (5th Cir. 1996).  The  Defendant respectfully requests this Honorable Court not to count this two points to increase the offense level.

**OBJECTION NO. 8:**

8. Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE R. HERNANDEZ, objects to page 9, paragraph 32 of the PSI whereby "the defendant has not clearly

OBJECTIONS TO PRESENTENCE REPORT   Page 8

demonstrated a recognition and affirmative acceptance of personal responsibility for his offense conduct."

Defendant Juan Jesus Barron contends that he should be granted a two point reduction since he has complied with this provision of *U.S.S.G.,* Section 3E1.1, since his case fits under "a rare situation".    Further, the Defendant contends that the above statement is erroneous based on the fact that Juan Jesus Barron has admitted guilt and accepted responsibility for his actions, however, he has relied on the fact that the government engaged in a conspiracy to entrap him.  Apparently, there is a conflict within the circuits whereby the fifth circuit shows through, *United States vs. Brace,* that only in rare situations can you allow acceptance of responsibility when entrapment is alleged.  On the other hand, according to the tenth circuit, in *United States vs. Hoenscheidt,* 7 F.3d 1528(10th Cir. 1993), the Court reasoned that acceptance of responsibility in entrapment cases should be allowed and the valuation of points toward a two point reduction be readily assessed in all entrapment cases whereby the defendant admits the conduct but asserts an apparently imperfect defense.

Further, based on the fact that there is a conflict within the tenth circuit and fifth circuit, the Defendant therefore claims a denial of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and a denial of Due Process.  Without uniformity within the circuits, the purpose of the sentencing guidelines become obsolete, and this in turn, leads to deviation from a standard of uniformed application throughout the United States.  The Sentencing Commission originally promulgated this sentencing guidelines as emergency amendments to deter "single acts of aberrant behavior." *See U.S.S.G.* Chapter 1, Part A. When there is conflict within the circuits in allowing a two point reduction to the offense level when alleging the entrapment defense, then  a defendant is not afforded equal protection of the laws under our system of justice.  Therefore, the Defendant Juan Jesus Barron hereby respectfully requests this Court grant him two point reduction to the offense level.


**OBJECTION NO. 9:**

9. Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE R.

OBJECTIONS TO PRESENTENCE REPORT   Page 9

HERNANDEZ, objects to page 12, paragraph 43, of the PSI whereby the defendant is being given one point towards the Defendant's Criminal History Category.

Defendant Juan Jesus Barron contends that pursuant to 4A1.1(c), which reads in part, "...Certain prior sentences are not counted or are counted only under certain conditions:...Sentences for certain specified non-felony offenses are counted only if they meet certain requirements. *See* Section 4a1.2(c)(1)." The previous quoted provision reads as follows, "...Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense..." See Section 4a1.2(c)(1). Neither the laundry list of instant offenses in this section pertain to a Possession of Marihuana charge, nor was the term of imprisonment at least thirty days, since Defendant Juan Jesus Barron only served 10 days in jail in lieu of a $95 dollar fine.

Therefore, Defendant would respectfully ask this Court not to Count this as one point toward the criminal history category designation.

**OBJECTION NO. 10:**

10. Defendant, JUAN JESUS BARRON, by and through his attorney of record, JOSE R. HERNANDEZ, objects to page 12, paragraph 44, of the PSI whereby the defendant is being given one point towards the Defendant's Criminal History Category.

Defendant Juan Jesus Barron contends that pursuant to 4A1.1(c), which reads in part, "...Certain prior sentences are not counted or are counted only under certain conditions:...Sentences for certain specified non-felony offenses are counted only if they meet certain requirements. *See* Section 4a1.2(c)(1)." The previous quoted provision reads as follows, "...Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense..." *See* Section 4a1.2(c)(1). However, Section 4a1.2(c)(2) reads as follows, "Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted: Hitchhiking, Juvenile status offenses and truancy, loitering, Minor traffic

OBJECTIONS TO PRESENTENCE REPORT   Page 10

infractions (e.g.) speeding), public intoxication, Vagrancy." Hence, Driving While Intoxicated is a form of public intoxication since one of the elements of driving while intoxicated is to be in public operating a motor vehicle while intoxicated(having lost one's physical or mental ability to operate a motor vehicle.) The Defendant contends that the DWI and PI are similar and should never be counted, as this provision of the statute reads. *See supra.*

Therefore, Defendant would respectfully ask this Court not to Count this as one point toward the criminal history category designation.

## IV.

## DEFENDANT'S SENTENCING REQUEST

Based on a total offense level of twenty four (24), provided that the Court deny the two point level increase for the weapon, deny the two point level increase for the manager/supervisor role, grant the two point reduction for acceptance of responsibility, and a Criminal History Category of I, the guideline range for imprisonment is fifty one (51) to sixty-three (63) months and is found in Zone D of the Sentencing Table. The Defendant would respectfully ask this Court to consider sentencing him to the low end of the guideline level based on this analysis of the guidelines which would be fifty one (51) months in Prison.

Further, the Defendant Juan Jesus Barron would show the Court that he is a forty two (42) year old man that has resided in the Rio Grande Valley most of his adult life. Juan is a family man who has three (3) dependents. He is a devoted father and husband. Mr. Barron's wife, Manuela Hinojosa, has continually demonstrated her support for her husband and will be present at sentencing. Therefore, Juan Jesus Barron respectfully asks this Honorable Court to advise the Board of Prisons to place him in a facility as close to his family as possible.

OBJECTIONS TO PRESENTENCE REPORT   Page 11

Juan Jesus Barron's age and family commitments are proper considerations for the court in establishing a sentence within the guideline range. *See United States v. Lara-Velasquez*, 919 F.2d 946, 955 (5th Cir. 1990)(citing *United States v. Duarte*, 901 F.2d 1498, 1499 (9th Cir. 1990). In addition, Juan Jesus Barron suffers many physical ailments that include a herniated disk in his spinal column, arthritis, migraine headaches, and asthma. Before coming to Court, Mr. Barron was under the care of Dr. Rene Rodriguez in Elsa, Texas.

OBJECTIONS TO PRESENTENCE REPORT   Page 12

Wherefore, the Defendant Juan Jesus Barron prays this Honorable Court to note Defendant's objections to the pre-sentence investigation report. The Defendant respectfully asks that the court sentence him at the lowest end of the guideline range, and that the Defendant be given credit for all the time he has been incarcerated pending this case.

Respectfully submitted,

BY: _____

JOSE (JOE) R. HERNANDEZ
Attorney at Law
State Bar No. 00792580
Federal ID No.20759
1325 Palm Blvd.
Brownsville, Texas 78520
Tel. (956) 504-5100
Fax (956) 504-5404

ATTORNEY FOR DEFENDANT,
JUAN JESUS BARRON

REVIEWED BY DEFENDANT:

_____
JUAN JESUS BARRON

OBJECTIONS TO PRESENTENCE REPORT    Page

# CERTIFICATE OF SERVICE

I, JOE R. HERNANDEZ  certify that on the 12th day of February, 2001, a true and

correct copy of the foregoing Defendant's Objections to the Pre-Sentence Investigation Report was

forwarded to Assistant United States Attorney, JOSE (JOE) ESQUIVEL at 600 E. Harrison St.,

Ste. 201, Brownsville, Texas 78520 and to United States Probation Officer, JESUS MUNOZ, SR.

at 600 Harrison St., Ste. 103, Brownsville, Texas 78520.

*LAW OFFICE OF JOSE R. HERNANDEZ*

Joe R. Hernandez
Attorney for Defendant: Juan Jesus Barron

OBJECTIONS TO PRESENTENCE REPORT  Page 14

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U. S. COURT OF APPEALS
**FILED**

OCT 1 7 2001

No. 01-40357
Summary Calendar

CHARLES R. FULBRUGE III
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN JESUS BARRON,

Defendant-Appellant.

- - - - - - - - -
Appeal from the United States District Court
for the Southern District of Texas
USDC No. B-00-CR-425-3
- - - - - - - - - -

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Juan Jesus Barron appeals from his jury-verdict conviction and sentence for conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana. He argues that: (1) the district court erred by denying his request for a jury instruction regarding entrapment; (2) the district court abused its discretion by denying his motion for a mistrial; and (3) the district court erred by declining to decrease his offense level for acceptance of responsibility.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

GOVERNMENT
EXHIBIT
2

No. 01-40357
-2-

The record indicates that Barron failed to make the requisite showing to warrant a jury instruction for entrapment. See United States v. Bradfield, 113 F.3d 515, 521 (5th Cir. 1997). The district court did not abuse its discretion by denying Barron's motion for a mistrial because any error based on the admission of stale convictions was rendered harmless by the curative jury instruction and the overwhelming evidence of Barron's guilt. See United States v. Sotelo, 97 F.3d 782, 797-98 (5th Cir. 1996). Furthermore, the record shows that Barron was not entitled to an adjustment for acceptance of responsibility. See United States v. Brace, 145 F.3d 247, 264-65 (5th Cir. 1998).

Accordingly, the district court's judgment is AFFIRMED.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUAN JOSE BARRON, | § | |
|     Petitioner-Defendant, | § | |
| | § | |
| v. | § | (CA B-02-240) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Respondent-Plaintiff. | § | |
|     (CR B-00-425) | § | |

## ORDER

The Court, having considered Barron's motion to vacate sentence under 28 U.S.C. §2255 and the government's answer, concludes that dismissal is warranted. The complaints concerning the effectiveness of attorney Jose Hernandez are factually and legally unfounded. Furthermore, no prejudice is shown. Additionally, there is no legal support for Barron's attack on the sufficiency of the indictment. Dismissal is warranted and recommended.

DONE this _____ day of _____, 2003 at Brownsville, Texas.

_____
UNITED STATES MAGISTRATE JUDGE