UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

APR 2 5 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| JUAN JESUS BARRON, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-02-240 |
| | § | CRIMINAL NO. B-00-425 |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Juan Jesus Barron (Petitioner) has filed a timely 28 U.S.C. Section 2255 petition for a writ of habeas corpus. Petitioner asserts four grounds for relief: (1) his trial counsel was ineffective in several respects; (2) the district court misapplied the Guidelines by not assessing a minor role adjustment; (3) the district court abused its discretion in denying the motion for mistrial upon the improper impeachment by the government of Barron's stale felony convictions; and (4) Barron was sentenced in violation of *Apprendi*. For the reasons stated below, the petition should be DENIED.

### PROCEDURAL BACKGROUND

Barron was charged by indictment on October 10, 2000, in the United States District Court for the Southern District of Texas, Brownsville Division, with conspiracy to possess with intent to distribute in excess of 100 kilos of marijuana and with possession with intent to distribute in excess of 100 kilos of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B). On December 7, 2000, Barron was tried by a jury, and on December 13, 2000, the jury found Barron guilty of both counts. On March 12, 2001, the district court sentenced Barron

1

to concurrent terms of one hundred twenty (120) months confinement, four-year terms of supervised release, and a $200.00 special assessment.

On March 13, 2001, Barron timely filed notice of appeal. In his appeal, Barron brought three issues: (1) whether the district court erred in refusing to charge the jury on entrapment, Barron's theory of defense; (2) whether the district court abused its discretion in permitting the government to cross examine the petitioner regarding his prior conviction, and if so, whether it resulted in harmless error; and (3) whether the district court erred in denying Barron acceptance of responsibility. The judgment was affirmed in *United States v. Barron*.[1] The mandate was issued on December 13, 2001. Thereafter, Barron filed a petition for a writ of certiorari. On April 15, 2002, said petition was denied by the United States Supreme Court. On December 30, 2002, Barron timely filed the instant motion.

## FACTUAL BACKGROUND

On September 15, 2000, a confidential informant learned from Esequiel Gonzalez-Salinas that a quantity of marijuana was being offered for sale.[2] The source of the marijuana was Rene de la Pena. The informant introduced an undercover law enforcement agent (hereinafter UC) to Salinas as a person interested in purchasing the marijuana on September 18, 2000, at approximately 3:30 or 4:00 p.m. at a grocery store in Los Indios, Texas. Salinas agreed to take the UC to the location of the marijuana for the sale. Salinas guided the UC west on State Highway 281, then onto Farm Road 41 to Mercedes, Texas. During the drive, the UC discussed

---

[1] See United States v. Barron, 01-40357 (5th Cir. 2001).

[2] The factual background is taken from the Government's Motion to Dismiss, which was first set out in the presentence report at ¶¶ 8-20 and 23.

the prospective purchase of 300 pounds of marijuana with Salinas. Salinas told the UC to drive slowly, because "they were getting everything ready." The undercover agent explained Salinas that the purchase money was with the "money man" located in La Feria, Texas. Prior to reaching their destination, Petitioner's home, Salinas directed the UC to drive around to determine if they were being followed by law enforcement.

Meanwhile, back at Petitioner's home, at approximately 4:30 p.m., the Petitioner summoned Sergio Cavazos-Medrano over to his home. Once there, Petitioner showed Cavazos the bundles of marijuana. Upon the Petitioner's request, Cavazos was to assist in loading the marijuana into the van.

Upon arriving at Petitioner's home, Barron approached the UC van. Petitioner advised the UC that he only had 250 pounds of marijuana, but that if the UC could wait thirty minutes, he could sell the UC an additional 50 pounds. The UC declined to wait, advising the Petitioner that he would take the 250 pounds, then buy the other 50 pounds on a later date. Petitioner directed the UC to back the van into the driveway. The Petitioner, Salinas, Cavazos-Medrano, and Joel Braulio Rodriguez retrieved the marijuana from a storage room at the house and loaded it into the van. Salinas re-entered the van and directed the UC to depart in order for the UC to retrieve the purchase money. Petitioner, Rodriguez, and Cavazos followed the UC van in another car. Once they reached La Feria, Texas, Salinas directed the UC to pull into a gas station there and to call the "money man" to bring the money to the station. While they waited, Salinas conversed with Petitioner. The car containing the Petitioner, Rodriguez, and Cavazos drove across the street into the Dairy Queen parking lot. Instead of the "money man" arriving, a police cruiser arrived. Salinas directed the UC to drive off. However, the cruiser pulled the van over a short distance

away. As the cruiser arrived at the scene, the vehicle containing the Petitioner attempted to depart the Dairy Queen parking lot, but was stopped by agents. The police seized the 250 pounds of marijuana from the UC van. As an agent approached the vehicle containing the Petitioner, the agent observed the Petitioner reaching between his legs under the seat. The Petitioner was immediately pulled from the vehicle. A loaded Browning .9mm pistol, with a live round in the chamber was retrieved from beneath the front seat where the Petitioner had been seated. In the back seat, a bullet proof vest was found.

Following his arrest and receipt of Miranda warnings, the Petitioner advised the agents that he had been told by Rene de la Pena that de la Pena had paid a U.S. official $5,000.00 to cross marijuana into the United States. De la Pena had delivered the marijuana to Petitioner's house on September 16, 2000, for storage and sale. The Petitioner admitted that he sold the marijuana to the UC for $145.00 per pound and assisted in loading the marijuana into the UC van. Upon collecting the money for the sale of marijuana to the UC, the Petitioner was to deliver the money to de la Pena and receive his "cut" from de la Pena. The Petitioner provided agents with the cell number for de la Pena's phone. Phone records revealed the phone had been disconnected.

At trial, the Petitioner testified that he met co-defendant, Joel Braulio Rodriguez, in a small town near Matamoros, Mexico, in mid-July 2000. Rodriguez offered to buy the Petitioner's 4X4 Blazer truck, and asked Barron if he'd ever driven it through the river to bring marijuana into the United States. Barron gave Rodriguez his phone number in case Rodriguez wanted to buy the Blazer. Although Rodriguez visited Barron's home several times to look at the Blazer, he never purchased it.

In August, approximately one month prior to his arrest, Barron met Rene de la Pena at some horse races north of Edcouch on FM 1015. De la Pena asked Barron if he knew anyone interested in buying marijuana. Barron told de la Pena that "Checa Salinas" (Esequiel Gonzalez-Salinas) may be interested. De la Pena gave Barron his cell phone number. Apparently on the day of his arrest, Barron received a call from Salinas. Salinas told Barron that he, Salinas, knew Barron knew de la Pena, and asked Barron if he would store some marijuana for them for only a few hours. Salinas assured Barron that there would "not be a problem," as de la Pena had paid $5,000.00 to U.S. officials to cross the marijuana into the United States "without any problems." Later, de la Pena delivered the marijuana to Barron's house. Barron understood that de la Pena had delivered 300 pounds to him, however, Salinas advised him it was only 250 pounds. Barron became concerned with the weight discrepancy and attempted to phone de la Pena, but discovered the number de la Pena had given him two months prior had been disconnected.

Barron testified that he next heard from co-defendant Joel Braulio Rodriguez, who called Barron out of the blue and advised he was bringing Barron and his wife some cheese on the day of Barron's arrest. Barron naturally found this very "odd," as Rodriguez did not even know Barron's wife. Barron gave, as reasons for his decision to become involved with the marijuana, his physical condition and his belief that the law had been paid and therefore everything had been taken care of.

## ALLEGATIONS

In his petition, Barron brings allegations of "ineffective assistance" of counsel and a constitutional challenge to the statute of conviction.

A.  <u>Ineffective Assistance</u>

5

Barron alleges that trial counsel was constitutionally ineffective in several aspects: (1) counsel failed to perform a pre-trial investigation of the case; (2) counsel failed to file any objections to the pre-sentence report; (3) counsel failed to argue for a minor role adjustment; and (4) counsel failed to seek proper discovery by failing to learn about Barron's prior convictions for which Barron was improperly impeached during trial.

B.  **The district court misapplied the Guidelines by not assessing a minor role adjustment**

Barron argues that the district court erred by not assessing Barron a minor role adjustment. Describing his role as that of a "courier for a single transaction," Barron argues the district court thereby misapplied the Guidelines.

C.  **The district court abused its discretion in denying the motion for mistrial upon the improper impeachment by the government by state felony convictions**

Barron argues the district court abused its discretion by failing to grant Barron's motion for mistrial upon the government's improper impeachment of Barron through the introduction of Barron's prior convictions, which were more than ten years old, under Federal Rule of Evidence 609.

D.  **Barron was sentenced in violation of *Apprendi***

Petitioner argues that, as his verdict did not include a jury finding relating to quantity, under *Apprendi*, his sentence was limited to a maximum sentence of sixty months, the "default" or lowest statutory maximum sentence for federal felony marijuana cases.

## ANALYSIS

The four grounds justifying relief under 28 U.S.C. Section 2255 are: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) that the sentence was "in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."[3] Thus, motions to vacate sentences "may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed."[4]

A "'collateral challenge may not do service for an appeal.'"[5] Once the direct review process has been terminated, a presumption of finality attaches and the conviction is reviewable only on issues of constitutional or jurisdictional magnitude.[6] If a claim of constitutional or jurisdictional dimension is raised, it is reviewable for the first time on collateral attack only if the movant demonstrates cause for his procedural default and actual resulting prejudice.[7] On the other hand, "[n]onconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding."[8]

---

[3] 28 U.S.C. § 2255.

[4] United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999). See also Davos v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962).

[5] United States v. Shaid, 937 F.2d 228, 233 (5th Cir. 1991)(en banc)(quoting United States v. Frady, 456 U.S. 152, 167-68 (1982)).

[6] See Shaid, 937 F.2d at 232.

[7] Id.

[8] United States v. Towe, 26 F.3d 614, 616 (5th Cir. 1994).

To obtain post-conviction relief in a collateral attack, a defendant must show either: (1) cause excusing his procedural default and actual prejudice resulting from the alleged error,[9] or (2) that he is actually innocent.[10] "'Actual innocence' means 'factual innocence, and not mere legal insufficiency.'"[11] To prove actual innocence, the Petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no [fact finder] would have convicted him."[12]

### A. *Ineffective Assistance of Counsel*

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in the case of *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[13]

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of

---

[9] See Frady, 456 U.S. at 167-68.

[10] See Shaid, 937 F.2d at 232.

[11] See Bousley v. United States, 523 U.S. 614, 623-24 (1998); United States v. Torres, 163 F.3d 909, 911 n.9 (5th Cir. 1999).

[12] Id.

[13] Strickland v. Washington, 466 U.S. 668, 687 (1984).

8

reasonableness."[14] In so doing, a convicted defendant must carry the burden of proof and overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.[15] The courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight.[16] It is strongly presumed that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[17] An attorney's strategic choices, usually based on information supplied by the defendant and from a thorough investigation of

---

[14] See Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Darden v. Wainwright, 477 U.S. 168, 184 (1986); Strickland v. Washington, 466 U.S. at 687-88; Lackey v. Johnson, 116 F.3d 149, 152 (5th Cir. 1997); Andrews v. Collins, 21 F.3d 612, 621 (5th Cir. 1994), cert. denied, 513 U.S. 1114 (1995); Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992), cert. denied, 507 U.S. 1056 (1993); and Black v. Collins, 962 F.2d 394, 401 (5th Cir. 1992), cert. denied, 504 U.S. 992 (1992).

[15] See Strickland v. Washington, 466 U.S. at 687-91; Jones v. Cain, 227 F.3d 228, 231 (5th Cir. 2000) (holding that trial counsel's decision not to put defendant on the stand in light of defendant's prior criminal record is a judgment call which seldom, if ever, will support a claim of ineffective assistance); Green v. Johnson, 160 F.3d 1029, 1035 n.1 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997), cert. denied, 523 U.S. 1099 (1998); Belyeu v. Scott, 67 F.3d 535, 538 (5th Cir. 1995), cert. denied, 517 U.S. 1144 (1996); Duff-Smith v. Collins, 973 F.2d at 1182. A federal habeas petitioner must carry the burden of demonstrating both counsel's deficient performance and resultant prejudice. See Burnett v. Collins, 982 F.2d 922, 928 (5th Cir. 1993); Martin v. Maggio, 711 F.2d 1273, 1279 (5th Cir. 1983), cert. denied, 469 U.S. 1028 (1984).

[16] See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993); Burger v. Kemp, 483 U.S. 776, 789 (1987); Strickland v. Washington, 466 U.S. at 689; United States v. Drones, 218 F.3d 496, 500-03 (5th Cir. 2000); Carter v. Johnson, 131 F.3d at 463; Williams v. Cain, 125 F.3d 269, 276 (5th Cir. 1997), cert. denied, 525 U.S. 859 (1998); Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997); United States v. Gaudet, 81 F.3d 585, 592 (5th Cir. 1996); and Belyeu v. Scott, 67 F.3d at 538. The deficiency prong of *Strickland* is judged by counsel's conduct under the law existing at the time of the conduct, see Westley v. Johnson, 83 F.3d 714, 723 (5th Cir. 1996), cert. denied, 519 U.S. 1094 (1997), and in view of the facts and resources available at the time of trial. See Williams v. Cain, 125 F.3d at 276, citing Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994), cert. denied, 513 U.S. 960 (1994).

[17] See Strickland v. Washington, 466 U.S. at 690; and Duff-Smith v. Collins, 973 F.2d at 1182.

relevant facts and law are virtually unchallengeable.[18] Counsel is required neither to advance every non-frivolous argument nor to investigate every conceivable matter inquiry into which could be classified as non-frivolous.[19] A criminal defense counsel is not required to exercise clairvoyance during the course of a criminal trial.[20] Likewise, the Sixth Amendment does not require that counsel do what is impossible or unethical; if there is no bona fide defense to the charge, counsel is not required to create one.[21]

---

[18] See Jones v. Jones, 163 F.3d 285, 300 (5th Cir. 1998), cert. denied, 528 U.S. 895 (1999); Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997), cert. denied, 522 U.S. 944 (1997); Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997) (stating that "a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness"); Boyle v. Johnson, 93 F.3d 180, 187-88 (5th Cir. 1996), cert. denied, 519 U.S. 1120 (1997) (holding that an attorney's decision not to pursue a mental health defense or to present mitigating evidence concerning the defendant's possible mental illness was reasonable where counsel was concerned that such testimony would not be viewed as mitigating by the jury and that the prosecution might respond to such testimony by putting on its own psychiatric testimony regarding the defendant's violent tendencies).

[19] See Neal v. Cain, 141 F.3d 207, 214-15 (5th Cir. 1998) (holding that petitioner's complaints regarding counsel's failure to raise specific defenses did not satisfy prejudice prong of Strickland where proposed defenses were without merit); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (ruling that "counsel cannot be deficient for failing to press a frivolous point"); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (opining that "counsel is not required by the Sixth Amendment to file meritless motions"); Smith v. Collins, 977 F.2d 951, 960 (5th Cir. 1992), cert. denied, 510 U.S. 829 (1993) (revealing that "the defense of a criminal case is not an undertaking in which everything not prohibited is required; nor does it contemplate the employment of wholly unlimited time and resources"); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) (stating that "counsel is not required to make futile motions or objections"); Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985) (holding that defense counsel is not required to investigate everyone whose name is mentioned by the defendant).

[20] See Sharp v. Johnson, 107 F.3d 282, 290 n.28 (5th Cir. 1997), citing Garland v. Maggio, 717 F.2d 199, 207 (5th Cir. 1983) (holding that clairvoyance is not a required attribute of effective representation). See also Lackey v. Johnson, 116 F.3d at 152 (ruling that trial counsel was not ineffective for failing to discover evidence about which the defendant knew but withheld from his counsel).

[21] See United States v. Cronic, 466 U.S. 648, 656 n.19 (1984); Jones v. Jones, 163 F.3d at 303.

The proper standard for evaluating counsel's performance under the Sixth Amendment is "reasonably effective assistance."[22] "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."[23] "Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."[24] In order to establish that he has sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[25] The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair; unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.[26]

In this case, Barron makes numerous conclusory allegations in support of his claims of ineffective assistance of counsel. "Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."[27] It appears in this case that Barron's counsel,

---

[22] Strickland v. Washington, 466 U.S. at 687; Bullock v. Whitley, 53 F.3d 697, 700 (5th Cir. 1995).

[23] Strickland v. Washington, 466 U.S. at 691, 104 S.Ct. at 2067.

[24] Id.

[25] See Williams v. Taylor, 529 U.S. at 391; Strickland v. Washington, 466 U.S. at 694.

[26] See Williams v. Taylor, 529 U.S. at 393 n.17; Strickland v. Washington, 466 U.S. at 692.

[27] See United States v. Wilkes, 20 F.3d at 653 (5th Cir. 1994).

both at trial and on appeal, was at the very least "reasonably effective."[28] Petitioner fails to raise any claims that raise to a constitutional level, therefore his ineffective assistance of counsel claim should be denied.

B. *The District Court Misapplied the Guidelines by not Assessing a Minor Role Adjustment*

Barron argues that the district court erred by not assessing Barron a minor role adjustment. Describing his role as that of a "courier for a single transaction," Barron contends the district court thereby misapplied the Guidelines. Barron's contention that the district court incorrectly applied the sentencing guidelines does not raise constitutional concerns which are cognizable under Section 2255. "Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding."[29] Furthermore, technical application or misapplication of the sentencing guidelines does not raise a constitutional issue cognizable under Section 2255.[30]

C. *The District Court Abused its Discretion in Denying the Motion for Mistrial upon the Improper Impeachment by the Government by State Felony Convictions*

Barron argues the district court abused its discretion by failing to grant Barron's motion for mistrial upon the government's improper impeachment of Barron through the introduction of

---

[28] Strickland v. Washington, 466 U.S. at 687; Bullock v. Whitley, 53 F.3d 697, 700 (5th Cir. 1995).

[29] See United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994)(citing United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992)).

[30] Id.

Barron's prior convictions of more than 10 years old, under Federal Rule of Evidence 609. Barron's instant claim essentially mirrors the complaint he made on direct appeal.

The instant claim is foreclosed under "the law of the case." "When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[31] However, "unlike res judicata, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not."[32] The law of the case proscription applies not only to issues decided explicitly, but also to everything decided "by necessary implication."[33] And, though not expressly addressed in an initial appeal, those matters that were fully briefed to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed are deemed to have been decided tacitly or implicitly, and their disposition is law of the case.[34] Therefore, Petitioner's claim must fail. The Fifth Circuit rejected his argument on direct appeal, and this court should be foreclosed from re-visiting it here.

D. ***Barron was Sentenced in Violation of Apprendi***

---

[31] Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988).

[32] Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Amer., 272 F.3d 276, 279 (5th Cir. 2001).

[33] See F.D.I.C. v. McFarland, 243 F.3d 876, 883 (5th Cir. 2001); Crowe v. Smith, 261 F.3d 558, 562 (5th Cir. 2001); Browning v. Navarro, 887 F.2d 553, 556 (5th Cir. 1989).

[34] See In re Felt, 255 F.3d 220, 225 (5th Cir. 2001), cert. denied, 122 S.Ct. 807 (2002).

Barron argues that, as his verdict did not include a jury finding relating to quantity, under *Apprendi v. New Jersey*,[35] his sentence was limited to a maximum sentence of sixty months, the "default" or lowest statutory maximum sentence for federal felony marijuana cases.

Barron's argument is premised on an incorrect factual basis. In fact, the jury in his case was charged in the jury instructions that an element of the charges included the quantity of marijuana involved. Barron was duly convicted of a violation of 21 U.S.C. Section 841(b)(1)(B), for which he was exposed to a maximum sentence of forty years confinement. His ten-year sentence does not implicate *Apprendi*.

## RECOMMENDATION

For the reasons stated above, it is recommended that Petitioner's 28 U.S.C. Section 2255 Application be DENIED.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[36]

DONE at Brownsville, Texas, this 23rd day of April, 2003.

Felix Recio
United States Magistrate Judge

---

[35] Apprendi v. New Jersey, 530 U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348 (2000).

[36] Douglass v. United States Automobile Association, 79 F.3d 1415 (5th Cir. 1996).